# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IAN STEWART,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-1379** |
| | : | |
| **THOMAS ZIEGLER,** *et al.* | : | |
| **Defendants.** | : | |

## MEMORANDUM

**SCHILLER, J.**                                                                    **OCTOBER 27, 2022**

Currently before the Court is an Amended Complaint ("AC") filed by Plaintiff Ian Stewart, a prisoner currently incarcerated at SCI Smithfield. (*See* ECF No. 8.) For the following reasons, the Court will dismiss with prejudice Stewart's official capacity claims against Sara McMullen, Damien Mscisz, Agent Probst, and all of Stewart's claims against Dennis E. Reinaker. Stewart's claims challenging the search of his residence will also be dismissed with prejudice. Stewart's official capacity claims against Thomas Ziegler will be dismissed without prejudice, and Stewart's excessive force claims against Defendants McMullen, Mscisz, and Probst will be served for a responsive pleading.

## I.    FACTUAL ALLEGATIONS[1]

Stewart's initial Complaint named Cody L. Wade (identified in the Complaint as a Lancaster County District Attorney),[2] Thomas Ziegler (identified as Lancaster County Drug

---

[1]  The factual allegations are taken from Stewart's Complaint, Amended Complaint, and public dockets, of which the Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[2]  Wade is not named in the Amended Complaint and has been terminated as a party.

Task Force), Sara McMullen (identified as a "PA state probation/parole agent"), and Damien

Mscisz (identified as a "PA state probation/parole agent").  Stewart averred that on September

11, 2020, McMullin and Mscisz came into his home without a warrant, and without reasonable

suspicion or probable cause that he was in violation of his parole.  (Compl. (ECF No. 2) at 4-5.)[3]

Stewart also asserted that an affidavit of probable cause was not signed off by a magistrate judge

and was "tampered with."  (*Id.* at 5.)  Stewart asserted various constitutional claims and sought

monetary damages in the amount of "$900,000 for punitive damages, intentional infliction of

emotional distress, false imprisonment, and negligence for the nearly 600 days [he'd] been in

jail."  (*Id.* at 3.)

    In an August 9, 2022 Memorandum and Order, the Court granted Stewart leave to

proceed *in forma pauperis* and dismissed his Complaint in part with prejudice and in part

without prejudice.  *See Stewart v. Wade*, No. 22-1379, 2022 WL 3213836, at *1 (E.D. Pa. Aug.

9, 2022).  First, the Court dismissed all of Stewart's claims based on the Pennsylvania

Constitution with prejudice because there is no private right of action for damages under the

Pennsylvania Constitution.  *Id.* at *3 (citing *Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir.

2019)).  Stewart's remaining claims concerning an allegedly warrantless search of his residence

while on parole, were dismissed without prejudice.  *Id.* at *2.  The Court determined that Stewart

did not plausibly allege that the parole officials lacked a reasonable suspicion to conduct the

search of his residence because he did not describe the events giving rise to the search or the

basis upon which he was charged with violating his probation or parole.  The Court's Order gave

Stewart thirty days to file an amended complaint in the event he could cure the defects in the

claims the Court had dismissed without prejudice.  (ECF No. 7.)  Stewart was also instructed that

---

[3]  The Court adopts the pagination supplied by the CM/ECF docketing system.

any amended complaint was required to state a claim without reference to the initial Complaint or other documents filed in this case, and suggested he be mindful of the Court's reasons for dismissing his initial Complaint. (*Id.*)

Stewart returned with his AC, which he completed by utilizing a standard complaint form for filing a civil action pursuant to 42 U.S.C. § 1983. (Am. Compl. (ECF No. 8).) Stewart again names Sara McMullen (identified in the AC as a "PA parole officer"), Damien Mscisz (identified as a "PA parole officer"), and Thomas Ziegler (identified as "Lancaster County Drug Task Force") as Defendants. (*Id.* at 3, 5.) Stewart also names Dennis E. Reinaker (identified as a "Judge") and Agent Probst (identified as a "PA parole officer") as Defendants. (*Id.* at 5, 7.) Stewart checked the boxes on the complaint form to indicate that each Defendant is sued in his or her official capacity only. (*Id.* at 3, 5, 7.)

Stewart avers that on September 11, 2020, McMullen, Mscisz, Ziegler, and Probst entered his residence[4] at approximately 10:30 a.m. while he was sleeping. (*Id.* at 11, 13.) Stewart asserts that Probst, McMullen, and Mscisz dragged him out of his bed, handcuffed him, and then threw him headfirst into a wall. (*Id.* at 13.) These parole officers, along with Ziegler, then searched Stewart's room by opening desk drawers, entering his closet, flipping his mattress, and breaking open a safe. (*Id.*) Stewart asserts he was dropped off at the county jail without being processed, arraigned, or fingerprinted. (*Id.* at 13.) Stewart claims he received an affidavit of probable cause eight months later stating that the "'[p]arole officers as well as the Lancaster County drug task force 'lawfully' searched'" him. (*Id.* at 14.) Stewart asserts that the affidavit is only signed by Ziegler, and it was not taken before a magistrate judge. (*Id.*)

---

[4] Stewart avers that the event giving rise to his claims occurred at 360 Valley Road in Lancaster, Pennsylvania. (Am. Compl. at 9.)

3

Stewart acknowledges that as a parolee, he may "be searched if it is reasonably suspected [he is] in violation of parole." (*Id.*) He avers, however, that the search that took place on September 11, 2020 lacked reasonable suspicion. (*Id.* at 13-14.) Stewart acknowledges that the Defendants allegedly "received a photograph via text from [his] father of a cash box containing some vials with white powder," but contends that "a police report stating [Stewart] was suspected of possessing drugs" and "an alleged picture of a safe" does not meet the standard of reasonable suspicion and is a violation of his Fourth Amendment rights. (*Id.*) Stewart contends that these Defendants are not permitted to "'switch hats' by ceasing to act as administrators of the parole system and begin acting like police officers, gathering evidence to support new crimes." (*Id.* at 13.)

Stewart was charged with drug offenses in a new criminal proceeding.[5] *See Commonwealth v. Stewart*, No. CP-36-CR-0004311-2020 (C.P. Lancaster). He appeared before the Honorable Dennis E. Reinaker for a suppression hearing, and his criminal attorney explained the lack of reasonable suspicion at that time. (Am. Compl. at 14.) Stewart contends that Judge Reinaker looked at the police officer sitting next to Stewart and told him to "[g]et [Stewart] out of here." (*Id.*) Stewart claims he never received a response about the suppression hearing. (*Id.*) The public docket indicates, however, that Judge Reinaker denied the suppression motion on November 3, 2021. *Stewart*, CP-36-CR-0004311-2020.

On May 17, 2022, following a trial before Judge Reinaker, Stewart was found guilty of one count of manufacture, delivery, or possession with intent to manufacture or deliver and one count of use or possession of drug paraphernalia. (*Id.*) Judge Reinaker imposed a sentence of

---

[5] The public docket notes an offense date of September 11, 2020. *Stewart*, CP-36-CR-0004311-2020.

six to twelve years imprisonment on August 5, 2022.  (*Id.*)  This conviction has not been vacated

or invalidated.  (*Id.*)  Stewart was also charged with a probation or parole violation in connection

with the new charges.  *See Commonwealth v. Stewart*, Nos. CP-36-CR-0002042-2015 (C.P.

Lancaster).  Following his conviction on the new drug charges, he received a violation hearing

and, on August 5, 2022, was sentenced in connection with the violation.  *Id.*

Stewart asserts violations of the Fourth, Eighth, and Fourteenth Amendments to the

United States Constitution.  (Am. Compl. at 5.)  He seeks monetary damages in the amount of

$2.5 million for "intentional infliction of emotional distress" and punitive damages in the amount

of $500,000.  (*Id.* at 11.)

## II.      STANDARD OF REVIEW

Since Stewart is proceeding *in forma pauperis*, his AC is subject to screening pursuant to

28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the AC if it fails to state a

claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the

same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),

*see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts

alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's]

favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to

state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting

*Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not

suffice.  *Iqbal*, 556 U.S. at 678.

As Stewart is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.   Official Capacity Claims

#### 1.   Claims Against McMullen, Mscisz, Probst, and Reinaker

Stewart asserts official capacity claims against McMullen, Mscisz, and Probst, all of whom are employees of the Pennsylvania Department of Probation and Parole. (Am. Compl. at 3, 7.) Stewart also asserts an official capacity claim against Lancaster Court of Common Pleas Judge Reinaker. (*Id.* at 5.)

States and their agencies are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City*

*Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  The United States Court of Appeals for the Third Circuit has repeatedly held that the Courts of Common Pleas and the probation and parole departments, as part of Pennsylvania's unified judicial system, share in the Commonwealth's Eleventh Amendment immunity. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005); *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008) (holding that Pennsylvania's Judicial Districts are entitled to immunity from suit under the Eleventh Amendment) (citing *Benn¸* 426 F.3d at 241).

Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will*, 491 U.S. at 70-71.  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.  Accordingly, Stewart's official capacity claims against these Defendants will be dismissed with prejudice.

## 2.      Claims Against Ziegler

Stewart also asserts official capacity claims against Ziegler, an employee of Lancaster County.  (Am. Compl. at 5.)  Claims against county-level officials named in their official capacity are indistinguishable from claims against the entity that employs them, in this case Chester County.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support an official capacity/municipal liability claim.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

Stewart makes no allegations regarding a specific custom or policy by which official capacity claims may be maintained, and he fails to allege that any policy or custom of Lancaster County caused the constitutional violations he describes in his Complaint.  Accordingly, Stewart's official capacity claims against Ziegler will be dismissed.  Rather than delay service of the excessive force claims against Defendants Probst, McMullen, and Mscisz, the Court will dismiss the official capacity claim against Ziegler without prejudice on screening and consider granting Stewart leave to file an amended complaint should he chose to pursue an official capacity claim against Ziegler.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)  (in determining whether a complaint states a claim, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (quotations omitted)).

B.    **Individual Capacity Claims**

Stewart appears not to have understood the implication of checking solely the official capacity boxes on the form complaint he used to prepare his pleading.  As Stewart is proceeding as a *pro se* litigant, and further, since the Complaint seeks damages for Defendants' actions, the Court will liberally construe the Complaint as also asserting claims against the Defendants in their individual capacities.  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed even though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).  The Court addresses these claims below.

1.    **Judicial Immunity – Claims Against Judge Reinaker**

Stewart's claims against Judge Reinaker will be dismissed with prejudice.  Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge."  *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'"  *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).  "A judge will not be deprived of immunity

9

because the action he took was in error, was done maliciously, or was in excess of his authority" *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (citations omitted).  Moreover, "[i]mmunity will not be forfeited because a judge has committed 'grave procedural errors,' or because a judge has conducted a proceeding in an 'informal and ex parte' manner', . . . [or] because the judge's action is 'unfair' or controversial." *Gallas*, 211 F.3d at 769 (citations omitted).

Stewart's claim for money damages is not plausible because Judge Reinaker's alleged acts in presiding over Stewart's criminal case are functions normally performed by a judge and there is no assertion that he acted in complete absence of jurisdiction as a Judge of the Court of Common Pleas.  Accordingly, Stewart's claims against Judge Reinaker will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  *See Kinnard v. George*, 652 F. App'x 96, 98 (3d Cir. 2016) (*per curiam*) (finding § 1983 action by a *pro se* plaintiff against two state court judges was properly dismissed where plaintiff complained of "judicial actions that [the] Judges . . . took in the course of an official criminal proceeding" because the judges were "protected by absolute judicial immunity").

### 2.    Money Damages for Illegal Search

Stewart avers that Defendants McMullen, Mscisz, Probst, and Ziegler illegally searched his home, without reasonable suspicion, in violation of his Fourth Amendment rights.  (Am. Compl. at 13-14.)  The Court recognizes that *Heck v. Humphrey*, 512 U.S. 477 (1994), which precludes plaintiffs from pursuing damages for wrongful conviction or imprisonment if success on such claims would necessarily imply the invalidity of an intact conviction, does not necessarily bar all Fourth Amendment claims.  *Heck*, 512 U.S. at 487 n. 7 ("Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983

action [i.e., a suit for damages attributable to an allegedly unreasonable search], even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.") (citations omitted).  However, *Heck* does bar such claims if they seek damages for the injury of conviction or imprisonment, which is what Stewart appears to seek here.  *See* Am. Compl. at 11 (averring he has suffered "severe emotional distress for being incarcerated 2 years" and is seeking monetary damages for the "infliction of emotional distress")); *Strunk v. E. Coventry Twp. Police Dep't*, 674 F. App'x 221, 223-24 (3d Cir. 2016) (quoting *Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998)) ("*Heck* bars only claims which 'seek [ ] to recover damages for an unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render the conviction or sentence unlawful'").  When a plaintiff challenges the legality of the underlying search and seizure of his home, and that search and seizure provided evidence to support the conviction, any claims based on the illegal search and seizure are barred by *Heck*.  *See Boyer v. Mohring*, 994 F. Supp. 2d 649, 654-655 (E.D. Pa. 2014).  In this matter, based on the state court dockets, it seems likely that the evidence secured during the September 11, 2020 search was used against Stewart to file new criminal drug charges in Lancaster County.  *Stewart*, CP-36-CR-0004311-2020.

In any event, even if *Heck* does not apply here, the claim fails as pled because Stewart must allege facts from which it could be plausibly inferred that reasonable suspicion was lacking for the search.  "[N]o more than reasonable suspicion" is required to justify a search of a probationer, since a probationer's reasonable expectation of privacy is decreased and the government's reasonable need to monitor behavior is increased.  *United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005) (citing *United States v. Knights,* 534 U.S. at 121, 118-119 (2001)).  A parole officer is also empowered to conduct a warrantless search of a parolee's property based

11

on reasonable suspicion that the parolee has violated a condition of parole, even after the parolee is in custody.  *United States v. Strickland*, 237 F. App'x 773, 777 (3d Cir. 2007), citing *United States v. Baker,* 221 F.3d 438, 443-45 (3d Cir.2000) and *United States v. Hill,* 967 F.2d 902, 907-11 (3d Cir.1992).  Stewart has not raised any factual allegations that reasonable suspicion was lacking.  To the contrary, Stewart avers that the Defendants "received a photograph via text from [his] father of a cash box containing some vials with white powder," but contends that "a police report stating [Stewart] was suspected of possessing drugs" and "an alleged picture of a safe" does not meet the standard of reasonable suspicion and is a violation of his Fourth Amendment rights.  (Am. Compl. at 13-14.)

According to Stewart then, the text from his father prompted the Defendants to go to Stewart's residence and conduct a search.  (*Id*. at 13.)  The information from Stewart's father gave Defendants the requisite suspicion to warrant a search of Stewart and his home.  According to the public dockets, drug contraband was discovered during the search and Stewart was charged with drug crimes based on that evidence.  Accordingly, his illegal search claim is not plausible and will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Having reviewed the docket in its entirety, the Court concludes that further attempts at amendment would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").

### 3.    Excessive Force Claims Against Probst, McMullen, and Mscisz

The Court understands Stewart to be asserting constitutional claims based on the use of excessive force against him by Probst, McMullen, and Mscisz when they dragged him out of his bed, handcuffed him, and then threw him headfirst into a wall.  (Am. Compl. at 13.)  "[C]laims

that law enforcement officers have used excessive force ... in the course of an arrest,
investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth
Amendment and its 'reasonableness' standard[.]"  *Graham v. Connor*, 490 U.S. 386, 395
(1989);[6] *see also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) ("In an excessive force
case, we determine whether a constitutional violation has occurred using the Fourth
Amendment's objective reasonableness test.") (citing *Graham*, 490 U.S. at 395).  In *Groman v.
Twp. of Manalapan*, 47 F.3d 628 (3d Cir. 1995), the United States Court of Appeals for the Third
Circuit explained the elements of an excessive force claim occurring during an arrest:

> An excessive force claim under § 1983 arising out of law enforcement conduct is
> based on the Fourth Amendment's protection from unreasonable seizures of the
> person.  *Graham* [] 490 U.S. [at 394-95].  A cause of action exists under § 1983
> when a law enforcement officer uses force so excessive that it violates the Fourth
> and Fourteenth Amendments to the United States Constitution.  *Brown v.
> Borough of Chambersburg*, 903 F.2d 274, 277 (3d Cir. 1990).  Police officers are
> privileged to commit a battery pursuant to a lawful arrest, but the privilege is
> negated by the use of excessive force.  *Edwards v. City of Phila.*, 860 F.2d 568,
> 572 (3d Cir.1988).
>
> When a police officer uses force to effectuate an arrest that force must be
> reasonable.  *Graham*, 490 U.S. at 396.  The reasonableness of the officer's use of
> force is measured by "careful attention to the facts and circumstances of each
> particular case, including the severity of the crime at issue, whether the suspect
> poses an immediate threat to the safety of the officers or others, and whether he is
> actively resisting arrest or attempting to evade arrest by flight."  *Id.*  The
> reasonableness inquiry is objective, but should give appropriate scope to the
> circumstances of the police action, which are often "tense, uncertain, and rapidly
> evolving."  *Id.* at 397.

*Groman,* 47 F.3d at 633-34.  As Stewart makes factual allegations that Defendants Probst,
McMullen, and Mscisz used an unreasonable amount of force against him, including handcuffing
him and throwing him headfirst into a wall (*see* Am. Compl. at 13), the claims against these

---

[6]  Stewart's excessive force claim is properly analyzed under the Fourth Amendment standard.
*Cf. Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997) (holding that an excessive force claim
stemming from the arrest of a parolee arose under the Fourth Amendment and was not affected
by the plaintiff's parole status).

Defendants in their individual capacities will be served for a responsive pleading.  However, because Stewart fails to specifically allege that Defendant Ziegler used excessive force during the incident, any claims of excessive force against him cannot proceed.[7]  *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss with prejudice Stewart's official capacity claims against McMullen, Mscisz, Probst, and all of Stewart's claims against Judge Reinaker.  Stewart's official capacity claims against Ziegler will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Stewart's claims challenging the search of his residence will be dismissed with prejudice and without leave to amend. *See Jones*, 944 F.3d at 483.   Stewart's excessive force claims against McMullen, Mscisz, and Probst will be served for a responsive pleading at this time.

An appropriate order follows.

**BY THE COURT:**

_____

**BERLE M. SCHILLER, J.**

---

[7]  Although Stewart initially noted that "4 individuals entered [his] residence," he later clarified that while Ziegler may have been present during the search of his residence, it was "Probst, McMullen and Mscisz" who dragged him out of his bed, handcuffed him, and then "threw him headfirst into a wall."  (Am. Compl. at 13.)