IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IAN STEWART,           Plaintiff, | : : : |
| v. | : :   Civ. No. 22-1379 |
| CODY L. WADE, et al.           Defendant. | : : : |

**Diamond, J.**                                                                                                                                                                       **January 3, 2025**

## MEMORANDUM

Pro se prisoner Ian Stewart alleges that the Pennsylvania Department of Corrections violated his civil rights. 28 U.S.C. § 1983; U.S. Const. amend. IV. The matter was originally assigned to Judge Schiller, who, after unsuccessfully attempting to appoint counsel for Stewart, dismissed all claims but one: the DOC's alleged use of excessive force when arresting Stewart. (Doc. No. 12.) After the matter was reassigned to me, I denied the DOC's Motion for Summary Judgment and set down the matter for trial on the single claim that Parole Field Services Agents Sara McMullen and Clinton Probst used excessive force when arresting Stewart for a parole violation, and that their Supervisor Damien Mscisz failed to intervene. (Doc. No. 39.) After conducting a bench trial on December 3, 2024, I took the matter under advisement and now return a verdict in favor of all Defendants. Because Stewart has failed to prove the use of excessive force, I will enter Judgment in favor of Defendants.

Pursuant to Fed. R. Civ. P. 52, I make the following finding of fact and conclusions of law.

## FINDINGS OF FACT

Stewart repeatedly and improperly sought to transform this trial into a suppression hearing respecting the evidence authorities recovered when they arrested him. To make out

excessive force, Stewart relied almost exclusively on his own uncorroborated trial testimony, which I largely discredit. (See Transcript of Civil Bench Trial, Doc. No. 55, at 4.) He introduced no documentary or medical evidence and acknowledged that he had lied to prison authorities. Stewart otherwise offered only the Affidavit of Probable Cause and the Incident Report Form listing the items seized during his arrest. (See Doc. No. 55 at 30; Plaintiff's Exs. 1 & 2.) These documents have nothing to do with the use of force. Although he initially called Agent McMullen, after I sustained objections to his repeated questions about probable cause and other suppression-related subjects, he ended his examinations, choosing to cross-examine McMullen when she was called by the defense. Stewart was smug and cocky throughout. In addition to Agent McMullen, Defendants called Agent Probst, Supervisor Mscisz, and Andrew Farr, a medical assistant formerly employed at the Lancaster County Prison. I credit their testimony, which was corroborated by documentary and digital evidence, and utterly refutes any suggestion of excessive force.

  1. On September 11, 2020, Ian Stewart was on state parole, supervised by Agent McMullen. (Doc. No. 55 at 34:2.)

  2. In the early morning hours of September 11, 2020, McMullen received a text message from Ian Stewart's father, Peter, in whose house Ian Stewart was residing. (Doc. No. 55 at 35:14-20.) Peter Stewart informed McMullen that his son had drugs in the house and that he wanted his son out of the residence immediately. (Id.) Peter also sent McMullen a photo showing what she described as:

> [A] cash box, like a silver box that has a small little lock on it, wide open on Mr. Stewart's bed. And from the picture, it appeared to be some sort of white pills, a white powder, and some other odds and ends in there.

(Id. at 35:21-36:2.)

3.      McMullen informed her Supervisor, Damien Mscisz, of Peter's messages and said that she wanted to search the residence. Mscisz approved, as did their Deputy District Director. (Id. at 36:17-25.)

4.      McMullen gathered the other Agents present in the office—Clinton Probst and Michael Stella—and proceeded to the Stewart residence with Supervisor Mscisz. (Id. at 37:1-5.)

5.      When the team arrived, Peter "opened the door for us and let us in, [and] told us that [Ian] Stewart was still up in his bedroom." (Id. at 37:6-8.)

6.      The Agents went upstairs and announced themselves as they approached Ian's room. When they entered the bedroom through an open door, Ian was out of bed. The cash box photographed by Stewart's father was immediately visible on the bed. (Id. at 38:1-9; 52:6-8; 59:6-18.)

7.      Following their standard procedure to ensure police safety, McMullen and Probst handcuffed Ian and shackled his legs. (Id. at 38:10-11; 39:25; 59:8-11.) Stella patted Ian down and found a vial containing a powdered substance. (Id. at 38:11.)

8.      Ian testified at deposition that he had taken Xanax the night before his arrest. (Doc. 33-1 at 16:15-17.) At trial, he testified (incredibly) that he could not recall if he had taken Xanax. (Doc. No. 55 at 10:21–11:14.)

9.      After searching him, the Agents moved Ian into the hallway, where he "passively resist[ed]" Stella's efforts to have Ian sit down. Without using significant force, Probst then assisted Stella in seating Ian. (Id. at 39:7-19; 53:1-5.)

10.     There is simply no evidence to support Ian's incredible testimony that Probst "grabbed the front of [Ian's] head and slammed it against the wall while [Ian] was

seated." (Id. at 4:21-22.) McMullen, Probst, and Mscisz all credibly refuted Ian's version of events and established that the Agents treated Ian appropriately at all times. (Id. at 45:1-12; 53:6-15; 60:21-23.)

11. I also discredit Stewart's testimony that he was handcuffed and shackled so tightly that he was left with bleeding and scarring. (Id. at 8:12-17.) Indeed, at deposition, Ian testified that the shackles were his "crown of thorns." (Doc. No. 31-1 at 11:17.) McMullen, Probst, and Mscisz all credibly testified that although Ian was uncooperative, he never complained about the tightness of his handcuffs or shackles. (Id. at 39:21-23; 53:16-18; 61:5-7.) Probst also explained that Agents regularly loosen restraints when prisoners complain they are too tight. (Id. at 53:18-22.)

12. Moreover, although Ian testified before me that he was bruised and bleeding from the purported head slamming and tight handcuffs, he did not so indicate when he filled out the medical intake form at the Lancaster County Prison shortly after his arrest. (Def. Ex. 2.) To the contrary, he answered "no" when asked the following questions:

    a. "Have you ever been a victim of violence?";

    b. "Have you ever had a head injury? If yes, when?"

(Id. at 5.) Andrew Farr, who conducted the intake, credibly testified that he would have noticed any visible bleeding and immediately informed his supervisor. (Doc. No. 55 at 66:2-5.)

13. Ian urges me to ignore his "no" responses on the intake form, testifying that these were not lies, but "just beating around the bush a little bit." (Doc. No. 55 at 18:25-19:1.)

14. Ian also urges me to disregard that he told Farr he used heroin or methadone "moderately." (Id. at 16.) Yet, he acknowledged at trial that: "It was a lie. Yeah. I don't use heroin or methadone." (Id. at 17:5-8.) Ian otherwise sought to explain his repeated dishonesty to Farr: "No, I wouldn't call it a lie. I would call it. I would call it trying to . . . not answer questions because I wanted to get to my cell and sleep." (Id. at 18:22-24.)

15. After local police arrived at Peter Stewart's home, Agent McMullen and the other Parole Agents escorted Ian through the hallway and down the staircase. The Agents guided Ian down the stairs backwards to ensure that he did not fall. (Id. at 40:18-41:3.) After Peter helped the Agents put his son's shoes on, the Agents led Ian to their vehicle and transported him to Lancaster County Prison. (Id.)

16. McMullen credibly explained that had Ian complained of injuries at any time, the Agents would have been required to take him first to Lancaster General Hospital to be medically cleared. (Id. at 41:12-18.) McMullen further explained that Lancaster County Prison would have turned Ian away if he had arrived complaining of untreated injuries. (Id.)

17. The credible evidence thus shows quite plainly that Parole Agents treated Ian reasonably throughout, and used limited, reasonable force. Ian simply fabricated his version of events "to go the whole way with this . . . to go the whole nine yards." (Doc. No. 57 at 6.)

**CONCLUSIONS OF LAW**

1.      The proper framework for analyzing excessive force claims pertaining to an arrest is under the Fourth Amendment's "objective reasonableness" standard. Moton v. Harris, 581 F. Supp. 3d 701, 706 (E.D. Pa. 2020) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)).

2.      I must look to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. I will also consider any physical injuries to the plaintiff. El v. City of Pittsburgh, 975 F.3d 327, 336 (3d Cir. 2020).

3.      As I have found, Ian Stewart suffered no physical injuries when he was arrested on September 11, 2020 and was not subjected to significant (much less excessive) force. Ian thus failed to prove his case. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 249 (3d Cir. 2013) ("Our traditional flexibility toward pro se pleadings does not require us to indulge evidentiary deficiencies.").

4.      Moreover, the Agents knew from Peter Stewart that Ian could be under the influence of drugs. As I have found, although Ian was uncooperative during the arrest, the Agents nevertheless treated him appropriately. For instance, they guided Ian down the stairs backwards so he would not fall. The Agents also took care that Ian have shoes on before they transported him. Plainly, the force the Agents used was objectively reasonable. Because excessive force was not used, Supervisor Mscisz was under no obligation to intervene in Ian's lawful arrest.

5.      In sum, Ian has utterly failed to present any credible evidence to support his excessive force claim.  To the contrary, even though Ian had the burden of proof, Defendants proved quite convincingly that they acted reasonably throughout.

6.      For these reasons, I will enter Judgment in favor of Defendants Sara McMullen, Clinton Probst, and Damien Mscisz, and against Plaintiff Ian Stewart.  The oral motions made by the Parties at trial are denied as moot.  An appropriate Order follows.

                                            **AND IT IS SO ORDERED.**

                                          */s/ Paul S. Diamond*
                                          **Paul S. Diamond, J.**